IN THE UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS - EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| MEP INFRASTRUCTURE SOLUTIONS, INC. | ) ) | Case No. 23-08505 |
| Debtor. | ) ) | Honorable A. Benjamin Goldgar |

**DEBTOR'S COMBINED REPLY IN SUPPORT OF MOTION TO REJECT AGREEMENT FOR THE PURCHASE AND SALE OF FUTURE RECEIVABLES WITH ROCKET CAPITAL NY, LLC AND TO DETERMINE AMOUNT OF SECURED CLAIM AND RESPONSE TO OBJECTION TO CONFIRMATION OF DEBTOR'S FIRST AMENDED SUBCHAPTER V PLAN OF REORGANIZATION**

MEP Infrastructure Solutions, Inc., debtor and debtor in possession ("MEPIS" or the "Debtor"), hereby submits this combined reply in support of its Motion for an order rejecting the Agreement for the Purchase and Sale of Future Receivables with Rocket Capital NY, LLC ("Rocket") dated April 17, 2023 (the "Agreement") and determining the value of the interest securing any claims under the Agreement, pursuant to 11 U.S.C. §§ 365, 506(a), and 552 and Fed. R. Bankr. P. 3012, 6006, 9006, and 9014 and response to Objection to Confirmation of Debtor's First Amended Subchapter V Plan of Reorganization.

**I.    ARGUMENT**

1.    MEPIS's First Amended Subchapter V Plan of Reorganization should be confirmed, because it has properly provided for the treatment of Rocket's claim as unsecured. In its Objection to Confirmation of Debtor's First Amended Subchapter V Plan of Reorganization [ECF No. 142], Rocket argues that "its security interest in the Future Receivables did not arise via a security agreement." (Obj. ¶ 6.) Rather, it alleges that "[a]s the transaction between the Debtor and Rocket was a purchase and sale transaction (i.e.- sale of a right to payment), Rocket automatically obtained a security interest in the Future Receivables." (Obj. ¶ 2.) Rocket further alleges: "The reality is that as long as the Debtor continues to operate and generate Future Receivables its claim is fully secured and should be treated as such." (Obj. ¶ 8.). The Court should

view this as an admission that Rocket's interest in future receivables (a classic after-acquired property situation) could only arise under a security agreement. To the extent that Rocket's lien resulted from a prepetition security agreement, the Future Receivables would not be subject to such lien:

> Except as provided in subsection (b) of this section, property acquired by the estate or by the debtor after the commencement of the case is not subject to any lien resulting from any security agreement entered into by the debtor before the commencement of the case.

11 U.S.C. § 552(a).

2. In order to avoid the operation of Section 552, Rocket argues that the Debtor's continued operations and generation of postpetition Future Receivables, which are property of the estate or the reorganized debtor, obligates it to pay such proceeds to Rocket, because it does not hold a security interest in the Future Receivables. In essence, Rocket argues that the Agreement is an executory agreement to extend financial accommodations or purchase and sale agreement without explicitly describing it as such. *See, e.g.*, *In re UAL Corp.*, 293 B.R. 183, 186 (Bankr. N.D. Ill. 2003) (explaining that an "executory contract is one in which the debtor must satisfy significant obligations in order to obtain significant performance from the other party to the contract").

3. If the Agreement is truly an executory contract to sell estate property, it would need to be approved under 11 U.S.C. § 363(b). The Debtor, however, has not sought approval to sell the property to Rocket because it would effectively be transferring estate property to an unsecured creditor in preference to other similarly situated creditors. Thus, the Agreement may not circumvent Section 363 and the Code's priority scheme.

4. If the Agreement is an agreement to extend financial accommodations, Section 365(c)(2) prohibits the Debtor from assuming it. 11 U.S.C. § 365(c)(2). "The term "financial accommodation" is not defined in the Bankruptcy Code, but given its context, the term must mean

something akin to an agreement to make a loan, since 'financial accommodation' is put in the same class as contracts to make loans and extensions of debt financing." *In re UAL Corp.*, 293 B.R. at 187. Since the Agreement is for the purposes of providing financial accommodations to the Debtor, the Debtor cannot assume the Agreement.

5. Under either approach, Rocket's objection must be overruled. It is either a creditor holding a security interest in the Debtor's property (limited by Section 552), or a creditor holding an unsecured claim under an unperformed prepetition agreement to transfer postpetition estate property (limited by Section 363).

6. Finally, the value of the Debtor's assets securing Rocket's claim is $0, rendering it a wholly unsecured creditor. At the time of the Agreement and Rocket's perfection of its security interests, the Debtor's accounts receivable were subject to a number of prior security interests in the aggregate amount of approximately $1.2 million, plus accrued interest and other charges.[1] Approximately $1 million of the receivables were over 90 days old, and MEPIS has been unable to collect from various customers.

7. In addition, on September 12, 2023, the Court entered an order [ECF No. 67] approving MEPIS's compromise with Defense Microelectronics Activity ("DMEA") and a subcontractor, Schetter Electric, LLC ("Schetter") [ECF No. 65]. Pursuant to the corresponding agreements, MEPIS was required to pay Schetter $425,000 [ECF No. 65, Ex. 1-2] as a condition precedent to DMEA's payment of the Government final payment in the amount of $793,665.67. The collection of this receivable was contingent upon the payment of the subcontractor. As such, the value of MEPIS's accounts receivables were reduced by $425,000.

---

[1] The U.S. Small Business Administration filed a UCC-1 financing statement on May 21, 2020 ($513,350), and the following merchant cash advance lenders filed UCC-1 financing statements prior to Rocket: BlueVine Inc. ($143,431); Byz Funder NY LLC ($168,750); NewCo Capital Group VI LLC ($236,173); CloudFund LLC ($130,750).

## II.     CONCLUSION

8. Rocket is either a secured party limited by Section 552, or a party to an unperformed contract to purchase estate assets limited by Section 363. Its collateral had no value as of the petition date. In sum, the Plan should be confirmed, because Rocket is properly classified and treated as an unsecured creditor.

Dated: December 27, 2023          Respectfully submitted,

MEP INFRASTRUCTURE SOLUTIONS, INC.

By: /s/ Paul M. Bauch
      One of Its Attorneys

Paul M. Bauch (ARDC #6196619)
BAUCH & MICHAELS, LLC
53 W. Jackson Boulevard, Suite 1115
Chicago, Illinois 60604
Tel: (312) 588-5000
pbauch@bmlawllc.com

By: /s/ Carolina Y. Sales
      One of Its Attorneys

Carolina Y. Sales (ARDC #6287277)
ROBBINS DIMONTE, LTD.
180 N. LaSalle St., Suite 3300
Chicago, Illinois 60601
Tel: 312-456-0372
csales@robbinsdimonte.com